UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JULIE S.[1] ,

        Plaintiff,

v.                          Civil Action 2:25-cv-27
                           Judge Michael H. Watson
COMMISSIONER OF SOCIAL     Magistrate Judge Chelsey M. Vascura
SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Julie S., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Period of Disability Benefits, Disability Insurance Benefits ("DIB"), Child's Insurance Benefits ("CIB"), and Supplemental Security Income ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 11), the Commissioner's Memorandum in Opposition (ECF No. 12), and the administrative record (ECF No. 6). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **OVERRULE** the Commissioner of Social Security's non-disability determination and **REMAND** this matter pursuant to Sentence 4 § 405(g).

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

## I.  BACKGROUND

Plaintiff protectively filed her DIB and SSI applications on September 26, 2022. She filed her CIB application on October 17, 2022. In all three applications, Plaintiff alleged that she became disabled beginning July 1, 2020. After Plaintiff's applications were denied initially and upon reconsideration, an Administrative Law Judge ("ALJ") held a telephonic hearing on November 3, 2023, at which Plaintiff, represented by counsel, appeared and testified. A vocational expert ("VE") also appeared and testified. On January 2, 2024, the ALJ issued an unfavorable determination (R. at 20–32), which became final on November 13, 2024, when the Appeals Council declined review. (*Id.* at 6–8.)

Plaintiff seeks judicial review of that unfavorable determination. She contends that the ALJ erred when evaluating medical opinion evidence. (Pl.'s Statement of Errors 7–13, ECF No. 11). The undersigned concludes that Plaintiff's contention of error has merit.

## II.  THE ALJ's DECISION

The ALJ issued the unfavorable determination on January 2, 2024. He initially determined that Plaintiff met the insured status requirements of the Social Security Act through

2

March 31, 2023. (R. at 23.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 2020, her alleged disability onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments: schizoaffective disorder, depressive disorder, anxiety disorder, and posttraumatic stress disorder (PTSD). (*Id.*) The ALJ also found that Plaintiff had the non-severe medically determinable impairment of cannabis use disorder and facial fracture. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 24.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 416.945(a)(1), (b)–(c).

3

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and perform two-to-three step tasks, not involving a fast work pace or strict time and production quotas, in an environment where there are few changes and where changes can be gradually introduced, and not involving more than occasional and superficial contact with others, with superficial defined as not involving persuasion, evaluation, negotiation, conflict resolution, or more than the straight-forward exchange of information. She has the ability to make simple work-related decisions.

(*Id*. at 25.)

At step four, the ALJ relied on testimony from the VE to determine that Plaintiff was unable to perform her past relevant work as a cashier. (*Id.* at 31.) Relying again on the VE's testimony at step five, the ALJ determined that considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including the representative jobs of marker, routing clerk, and hand packager. (*Id.* at 31–32.) Accordingly, the ALJ determined that Plaintiff was not disabled as defined in the Social Security Act during the relevant time frame. (*Id*. at 32.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### IV.  ANALYSIS

As explained above, Plaintiff challenges the ALJ's evaluation of medical opinion evidence. Specifically, Plaintiff contends that the ALJ erred when evaluating opinions from Sharon Lyon-Paul, CNP ("Nurse Lyon"), and Dorothy James, LPCC-S ("Counselor James"). The undersigned agrees.

An ALJ's RFC determination must be "based on all the relevant evidence" in a claimant's case record. §§ 404.1545(a)(1); 416.945(a)(1). The governing regulations[4] describe five categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). An ALJ need not "defer or give

---

[4] Because Plaintiff's applications were filed in 2022, they are subject to regulations governing applications filed after March 27, 2017.

any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. *Id.* And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*.

Here, Nurse Lyon and Counselor James completed forms rating Plaintiff's ability to perform unskilled work. (R. at 1642–43, 1376–77.) The ALJ discounted these opinions, writing as follows:

> I considered the opinion of the claimant's providers, Dorothy James, MEd, LPC, and Sharon Lyon-Paul, CNP, which lack persuasion (8F, 12F). They opined that the claimant was unable to meet competitive standards working in some areas needed to do unskilled work, and she was seriously limited in most other areas required to do unskilled work. They opined that the claimant's impairments or treatment would cause the claimant to miss work more than four days per month. First, this opinion is vague in terms of functional limitations. In addition, the opinion about missing work excessively is speculative and fails to account for the claimant's ability to attend most medical appointments with the exception of a handful. Finally, neither of these opinions make a reference to the claimant's cannabis use and how that impacts her mental capacity. As such, these opinions are inconsistent with, and unsupported by, the actual clinical findings and evidence of record.

(*Id*. at 30.)

As this discussion demonstrates, the ALJ discounted these opinions, in part, because they were vague. That characterization is inaccurate. (*Id*.) Although the opinions were set forth on

6

checkbox forms, the forms defined the terms used by Nurse Lyon and Counselor James to rate Plaintiff's abilities. For example, Nurse Lyon opined that Plaintiff could not remember work-like procedures, maintain attention for two-hour segments, or complete a normal workday and workweek without interruptions from psychologically based symptoms, "on a regular, reliable and sustained schedule in a regular work setting." (*Id*. at 1642.) Nurse Lyon additionally explained that her assessment of this limitation was supported, in part, by Plaintiff's anxiety, panic attacks, PTSD, depression, and her paranoia—a symptom of her schizophrenia. (*Id*.) Likewise, Counselor James opined that Plaintiff would not be able to work in coordination with or close proximity to others without being unduly distracted "on a regular, reliable and sustained schedule in a regular work setting." (*Id*. at 1376.) In support of this assessment, Counselor James cited Plaintiff's schizophrenia, depression, PTSD, insomnia, and panic disorders, and further explained that Plaintiff would often stare off and disassociate during conversations and arguments. (*Id*.) Given these descriptions of the opined limits, the undersigned is not convinced that the ALJ could discredit them as overly vague.

In addition, the ALJ discounted both opinions because neither Nurse Lyon or Counselor James referred to Plaintiff's cannabis use, or how her cannabis use impacted her mental capacity. (*Id*. at 30.) But the forms included directions as to how to consider co-existing substance abuse. The forms stated:

> To the extent it is possible to do so, do not consider any limitations imposed by any co-existing substance abuse in answering the questions below. Consider only the psychiatric illnesses apart from any substance abuse. If you cannot separate out what limitations may be due to substance abuse, please complete the form based upon all of the claimant's psychiatric disorders, including the substance abuse.

(*Id*. at 1642, 1376.) In light of these instructions, it appears that Nurse Lyon and Counselor James did not discuss Plaintiff's cannabis use because they were instructed to assess her limits

7

without considering any substance use if they were able to do so. (*Id*.) Accordingly, the absence of a cannabis-related discussion appears to reflect compliance with instructions rather than an oversight.

Defendant, however, contends that the ALJ's discussion of the record evidence, including Nurse Lyon's and Counselor James' "normal examination findings," undermines their opinions. (Def.'s Mem. in Opp'n 8–11, ECF No. 12.) In short, Defendant asks the Court to ignore the ALJ's stated reasons for discounting these opinions (*i.e.*, lack of specificity in the opined limitations and no discussions of cannabis use) and substitute other grounds. The Court can read the determination as a whole, but it cannot engage in *post hoc* rationalizations to uphold the ALJ's reasoning.

In any event, even if the ALJ's discussion of findings from Nurse Lyon's and Counselor James' treatment records could bolster the ALJ's supportability discussion, it would not cure the deficiency in his articulation of the consistency factor. Indeed, the ALJ did not meaningfully address the consistency factor at all when he discussed his evaluation of these opinions.

## V.     CONCLUSION and RECOMMENDED DISPOSITION

For all the foregoing reasons, the undersigned concludes that the ALJ erred when evaluating medical opinion evidence. As a result, it is **RECOMMENDED** that the Court **OVERRULE** Commissioner's non-disability determination and **REMAND** this matter. (ECF No. 11.)

## VI.     PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or

8

recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE